Hear ye, hear ye, hear ye. United States Code of Appeals for the Fifth Circuit is now open according to law. God save the United States and his Honorable Court. Welcome, counsel. We're grateful for your presence here. We have argument in number 20-50501, United Steel, Paper and Forestry, etc., etc. v. Jarvis, Anderson, and Brian Brady. Uh, I'm sorry. I've I've. We're back in our chambers, and I don't have my sheet with me. But who's representing the appellants here? Mr Vanoss? Yes, Your Honor. I am. You may proceed, sir. Thank you. And good morning. Morning. May it please the court and with the greatest respect to virtually in this temple to the match to the majesty of our system of justice, the majesty of our United States court system, and the and the ability to talk about the majesty of our Constitution and of our society's dedication to the rule of law. This case is before this court um appealing from a grant of summary judgment. The essential arguments um on behalf of my client, the plaintiff appellants, um are really that summary judgment was inappropriate because the record is replete with factual issues to be determined where credibility is to be weighed and determined by a jury or factual disputes are to be weighed and determined by a jury. I'm not here to try to tell the court which way the jury should rule in these credibility disputes and factual disputes. I'm here to submit to the court that these Mr Vanoss, can you uh take just a minute or maybe two minutes but no more than that to sum up your case and tell us why you have a winning case. One, two, three, four. Yes, Your and who was the president of his union, one of my clients, had a very positive performance review which was his last written performance review. In his performance review, for example, his supervisor wrote that he was an asset to the department, that he had excellent case management skills. We also have the fact that although he was discharged for alleged case management problems as a probation officer in San Antonio, Bexar County, Texas, an adult probation officer, he was not subject to any corrective measures for his alleged case management infractions. Despite his agency's progressive discipline policies and the fact that we have testimony from at least two managers by deposition and by declaration that standard practices in the agency are to first deal with a struggling performer by offering training or retraining and then if that doesn't work to offer and impose and assess what's called progressive discipline starting with a verbal counseling or written counseling. We also have a chronology of events. Okay, but yet I mean he was not subject to that. He'd already gone, he'd already been through that had he not and they gave him zero tolerance which as I understand meant they could fire him on the spot without further ado. Your honor, his supervisor who wrote the performance, the end of year performance review which was his last written performance review which said that his performance was meeting expectations. His supervisor testified in actions and performance improvement plans were not over case management. They were over other issues. So what really happened here your honor at least we believe that there is evidence from which the jury could reasonably find that what really happened here your honors is that he was not under any notice through corrective discipline or through training or through counseling or what they sometimes call coaching or disciplinary actions. He was not on any notice that his case management was jeopardizing his employment and in fact the performance written performance review that let me ask what to your case is there any significance to the fact that he was on the standard of zero tolerance? Your honor, that was for a previous incident that had occurred several years before and it had to do with an altercation with a fellow employee. It had nothing to do with his case management skills. So we think that is a significant factor that a jury should be entitled to weigh. What does zero tolerance mean from your point of view? What does zero tolerance mean in connection with the discipline that was administered to him? Your honor, we respectfully seek the opportunity to argue to a jury that the zero tolerance actually that the zero tolerance could be reasonably interpreted to mean that there better not be any repeat of anything that was similar to or the same type of infraction and but and that as time went by his performance should improve. Now we recognize there are opposing opposite arguments that could be made to the jury but we are here to respectfully respectfully submit to this honorable court that it is for the jury to weigh and consider the possible meanings and interpretations of factual actions like this court held in the case of Mooney versus is the power is the policy of zero tolerance in the the personnel handbooks of the probation service. I do not believe it is your honor but if I am incorrect I will certainly be happy to stand corrected but I do not believe it is your honor. You see your honor and what we seek an opportunity to argue to the jury is that there was a chronology of events the day after Mr. Castilleja was elected president of his employee association of probation officers. We have evidence that through sworn discovery testimony we have evidence that Mr. Anderson the defendant the lead defendant here came to approach Mr. Castilleja the day after his election as president of his employee association and said to him can we start fresh can we start over because Mr. Anderson knew that the employee association was planning what they called a no confidence vote and a and a petition which they would take to the public asking for no confidence in Mr. Anderson's leadership of the department and that seven and that Mr. Castilleja told Mr. Anderson I'm sorry chief I cannot retract the association's decision to move forward with that no confidence vote and petition because they've already voted to do it and I can't move so I mean this basically this basically was the decision of the association and not the plaintiff's individual personal decision to proceed against Mr. Anderson as a member of the association he supported it but it was a group decision and what he was we we would like the opportunity to argue to a jury your honor that when Mr. Castilleja had told Mr. Anderson I have to move forward with this because the group that I have been elected to be president of has chosen to do this I can't go backward on it and that seven days later we have test we have evidence in the discovery record seven days later Mr. Anderson spoke with the immediate past president who was also a supervisor in the can be active in unions that's Texas state law and that seven days after Mr. Castilleja had told Mr. Anderson I can't back off from that because the group has voted to do it Mr. Anderson in a off work time telephone conversation with Ms. Sherry Simonelli who was the immediate past president who had told Mr. Anderson about the impending no confidence vote Mr. Anderson told Ms. Simonelli made some made some pretty aggressive at least under our version of the evidence which we are seeking through this so let's assume that the evidence at least creates a fact issue that Mr. Castilleja's union activity was factored in some way into his termination under our case law though the defendants can show can they not that that they would have fired him regardless because of you of disciplinary problems and other problems and if they can prove that don't you lose regardless of whatever we think about the union side of this thing with the greatest of respect to your honor it's just a question that is the mount healthy v doyle test right from the supreme court and the employer defendants ability to show that is the second prong of a three-prong test right the third prong prong is that if the defendant employer makes that showing then the plaintiff or plaintiffs your plaintiffs have the right to try to show that uh that representation by the defendant employer is a pretext right and here we respectfully submit to this honorable court that this is so fact bound so replete with factual issues such as what's the meaning of the chronology who said what to whom who who meant what when they said various things what does the chronology mean can a jury reasonably find that um the defendant affilies representation that we would have fired him anyway is pretextual and we understand you can show pretext but is there summary judgment would be available if you can't create a fact issue on pretext right yes your honor that is certainly true no doubt about that under mount healthy v doyle okay and we would respectfully submit to this honorable court that um there is evidence from which pretext could reasonably be found such as the fact that uh we have discovery level evidence um we have discovery level evidence that other employees engaged in um similar types of case management infractions that mr castilleja um was accused of um and that they were given opportunities to improve such as the training and retraining and such as being put on notice through the progressive disciplinary actions that their uh employment was in jeopardy the last thing that mr castilleja knew in writing from uh his supervisors was a narrative performance review that said this man is an asset to the department but there were there were some negative comments about that review as well were they not and about in in terms of his failing to judges and other instances in which he just simply seemed to be not following the rules and he had been warned about that and that's what i understood was part of the zero tolerance is that they were trying to get him to change and follow the rules and then whenever he was fired and he came before the appellate group to appeal his decision they asked him specifically if he would follow the rules and he said he would try and that's all he did not agree to follow it i mean that's just the way the the defendants would look at it what do you have to say about that yes i would respectfully submit your honor uh that these other things uh such as you're not following the rules you're not doing the good job and so forth these were later in the proposal to fire him but in the last written performance review his supervisor said that he was meeting the expectations for his employment and for his job and that he was an asset to the department and that he had excellent case management skills so for all he knew he was doing what the job required in the critical and certainly a critical aspect for a probation officer of case management skills mr vanos i believe you have some rebuttal time so we we thank you for your principal argument let's hear from miss artelino thank you your honor well may it please the court emily artelino arguing on behalf of at the least jarvis anderson and brian brady sergio castilleja was fired because he grossly neglected his most basic job responsibilities as a probation officer he violated court orders he substituted his own for that of judges knowing that it was a violation of department policy to do so he allowed probationers to move out of the county and go unsupervised for months indeed over a year at a time he repeatedly failed to advise the court of positive drug and alcohol tests and ultimately allowed dwi probationers to drive drunk in the community until they wound up arrested and jailed again and sergio castilleja admits that he did all of these things he admits that they were violations of department policy and he admits and court orders and he admits that his actions put the community and the safety of probationers at risk what do you have to say about mr vanos argument though that the last written review said that he was meeting expectations well i think your honor acknowledged and um and and appropriately pointed out that that review did contain negative comments that related to mr castilleja's um poor performance in case management time management um failure to follow policy and in that review um it specifically mentions um in in the record on pages 9 16 and 9 18 that mr castilleja failed to respond to instructive feedback that he was failing uh to follow department policies and it even mentions that he was failing to report violations to the court so the the idea that mr castilleja had no warning um about some of his deficiencies um is just not supported by the record um your honor was also appropriate uh it was also appropriate to note that he was on um zero tolerance at the time uh of of the ultimate decision to terminate him and the last thing i want to point out about uh about that performance review is that the undisputed testimony from john escalante who was the supervisor um who who um who completed that performance review was that at the time he completed that review he only knew of the tip of the iceberg of some of these violations this was before um another probation officer came in and assumed mr castilleja's caseload and began to maybe mr vanoss has a point that that is a you're getting now into a jury determination you have on the one hand an analysis that says he's meeting expectations that's the last written report as i understand it about his conduct then you say well that's not really true because he had engaged in other conduct that was subsequent to that report but then that sounds like you have a a fact question as to how satisfactory his performance may have been and to that point john escalante who completed the review was not aware of the depth and seriousness of those allegations of those cases of those undisputed case management issues and he testified that had he been aware of those at the time he completed the review he never would put any of those positive remarks or or or or written that um castilleja met expectations because all of those things fell far below where probation officers um are anticipated to be and again the underlying case management issues are not disputed in this case um one getting back to and the mount healthy defense um that defense was created in order to ensure that um decision makers employed government employers um were not handicapped in how uh in their discretion to manage and supervise their the government functions and the employees that perform those a motivating um a retaliatory motive uh in the first amendment context and because mount healthy is an affirmative defense two things are true first it does not matter that there may be some evidence of a retaliatory motive so the um the the timeline of events uh the circumstantial evidence that uh mr vanu's referred to um creating and potentially an inference while we would dispute that it creates that inference um the fact that or whether um castilleja create uh met his planification burden is not an issue in this appeal um what is it what is the importance in your analysis of the fact that he was on the level of zero tolerance well i think that that um that particular aspect of uh of the record um furthers this idea that you know the plaintiffs are are attempting to um show pretext or create a fact issue um by showing that the department didn't follow its progressive discipline policy and that uh the fact that sergio castilleja was on zero tolerance at the time of the decision shows that it just wasn't accurate that he was entitled to any type of um attempt at rehabilitation under that policies that so the department was not um was not uh diverging from but how how long was he on zero tolerance uh policy for the entire from the time that he was issued that warning until he was fired was he under zero tolerance all that period of time he he he was um and looks like you tolerated a whole lot of conduct while he was zero tolerance looks like zero tolerance really doesn't mean much in this case and and with respect to that again really the focus is that that fact is relevant with respect to whether or not um the department you know followed its own policy the real um the real issue here both with the affirmative defense and also i might add the defense of qualified immunity um that is that is that issue here um anderson's decision which again is it is a um distinct standard that and and it is a question of law for the court to decide while the facts in um the facts underlying the mount health care defense and the qualified immunity defense there's significant overlap um that the standards are it really is the egregiousness of the violations the fact that um mr castilleja conceded to them um i think the the clear um probably the most poignant part of the record which again is he was represented by counsel he acknowledged that he was um departing from uh from department policy and court orders he acknowledged that he did not have the discretion as a community a probation officer to make those departures he um he the the back and forth between chief sergio castilleja um found it difficult to uh progress from his entrenched view of that that he admitted was wrong um in substituting his own judgment for the judgment of judgments um and nowhere in the record um does does is there any suggestion that any that when you look at what those underlying case management issues were that any other probation officer um did things of that level of severity and or um that that those probation officers were or were not just i was going to ask you about that miss artelino that the um mr van os brought up the other employees with respect to pretext he said there are other employees who were treated differently and so therefore that creates a fact issue that the reasons for firing mr castilleja were pretextual uh is that is that what you just said to me your response to his point exactly so there there are a few things to note about that argument and what the evidentiary record is that actually backs it up so the first point is that um even on an uh a you know an affirmative defense where the burden for the defendant is higher um be in order to create a fact issue what what is a material fact issue and what is a genuine fact dispute that standard does not change and the plaintiff's evidence with respect to malfeasance that or or or errors that sergio castilleja committed were commonplace which contradicts every other witness in in the case by the way um they just don't rise above that level of conclusory assertion um or and and there is no um there are no similarly situated because a comparator in the employment context is more than just some employee who at one point in time did something that maybe might be similar um so point number one is nothing in the other um probation officer's conduct where the audit reports at simonelli review suggests that a for how poorly um that probation officer had managed managed a case and those those district judges by the way are the the judges that appoint jarvis anderson to run and administer the the department um not a single um piece of evidence in this case suggests that any other probation officer had ever written repeatedly in the case file after um a probationer had um repeatedly reported using heroin uh or a probationer had repeatedly tested positive for alcohol sergio castilleja wrote that he needed to file a violation report or or file a motion to revoke he knew what he needed to do and he just didn't do it and nothing in the record suggests that any other um probation officer did that and importantly the plaintiff's assert with absolutely no basis in the record that these other um uh probation officers the the subjects of the audit um were not disciplined they just assert that they were not disciplined there is no factual basis for that and or for evidence of that whether they were or whether they weren't in and for the the few that they suggest were not terminated um there is they also don't meet the requirement for being legally valid comparators because the plaintiffs have done nothing there's no evidence in the record showing that they were similarly situated in terms of their experience level with the department in terms of their um their their disciplinary history or background or in terms of their acknowledgement that they actually did violate policy and they're you know begrudging unwillingness or difficulties to actually remedy that um so that the there just are no legally viable comparators and again it you can you can on evidence and at a summary judgment stage the plaintiff has to argue based on evidence that is more than a scintilla or um evidence that is not merely conclusory and evidence that meets um the legal definition of a comparator um i'd also like to um get back um just a bit to the qualified immunity issue which also overlaps with the official immunity issue in support of uh dismissal of the texas labor code claim um and i i want to just acknowledge that when it when it comes to that particular issue um it is a matter of law for the court to decide whether jarvis anderson is acting reasonably with respect to um his discretion in terminating sergio castilleja for these acknowledged and egregious case management issues um the plaintiffs of and you know one thing it seems to me that you may be avoiding uh and i wonder whether how strong it is in the case either way is tying his discharge to protected activity in other words i understand that he was president of the union and i understand that he had the conversation with the probation chief that he had and so on but it seems to me that there's very little evidence that ties him directly to protected act to specific protected activity and you seem to have avoided that and i'm wondering whether you assume that he engaged in protected activity that is connected to his discharge and how that connection exists we put it together we certainly don't assume that and and in fact um i think i think it it is going out on a limb to assume that um the the plaintiffs have even made a premonition case of first amendment retaliation um given the um uh given the the uh vagueness in the record as to what that protected activity actually was what um jarvis anderson knew and when he knew it um however um we feel that the evidence in instead of um delving into that minutiae um we feel that the evidence in this case is strong enough to support a summary judgment on the affirmative defense and at a minimum qualified immunity um on the reasonableness form of of um of the qualified immunity defense based on the undisputed nature um of the case violations that issue the information that jarvis anderson had about those well i mean is that is your theory then on the healthy uh yes he engaged in protected activity but he would have been fired anyway is that your theory of the case or you're saying that he did not engage in protected activity and there's no connection between his termination and his alleged protected activity we certainly don't concede that there was um protected activity or or any um retaliatory motive connected with this termination however um we the the defendants didn't brief that issue in the issue of the craniofacial case um and the court um the district court uh assumed the the craniofacial uh case had been met so i'd like to just end by um reminding the court that the first amendment doesn't create uh protection for employees that just fail in their basic job responsibilities and the jurisprudence surrounding first amendment retaliation ensures that employers um can retain their ability to make the discretionary decisions um that are necessary to effectively run the department to appropriately um manage uh uh employees um and and to remedy situations where just like this um where it is undisputed that a veteran probation officer knew what he needed to do repeatedly failed to do that um and really offered nothing more than than a uh you know wimpy i'll try to do better um after having a long history of just of a disciplinary record with the agency um nothing in the facts of this case um or first amendment jurisprudence suggests that um that that the an employer must retain an employee like that um and so we respectfully submit that we've met the burden on mount comfy and also um for qualified immunity thank you counsel thank you mr van os you have five minutes in rebuttal you are muted sir you're still muted you are still muted how about now thank you your honor i'm sorry i apologize no problem many judges have the same problem uh the new virtual world i guess um hope it goes away soon but i do too um my honorable opposing counsel has made um arguments that could be reasonably made that she could reasonably make to a jury but our point here is that these are arguments for the jury and not for the court because these involve credibility disputes these involve factual issues such as if mr john escalante the supervisor thought that mr castilleja was not meeting the expectations of his job why did he say in the narrative portion why did he say on his last written annual performance appraisal that he has excellent case management skills and that he's an asset to this department and to our unit and it is a great help to new employees in the unit why did he say things like that so later on in the deposition he says well i didn't really he basically says i didn't really mean those things well that's what did he really mean if he's comparing some changed deposition testimony with his own last written review that's a credibility dispute and a dispute and an issue of weighing evidence that's for a jury and with respect to the comparators we have in the record they are in the sealed portion of the record but they're in the record certainly before this court we have in the record two firing papers two notices of firing to two other employees who were the same kind of case management officers as mr castilleja and they were fired for poor written firing decisions say on their face that they were given opportunities to improve and they did not improve we respectfully submit to this honorable court and we are asking for the opportunity to argue to the jury that mr castilleja the only last thing he knew from written performance appraisals and written supervisory notices the last thing he knew in writing was that you have excellent case management skills and you're an asset to this department under the haverda case under the mooney case under the copeland case we respectfully submit to this court that these kinds of things and with respect to the mouth healthy burden shifting analysis the statements that miss simonelli attributes to mr anderson in their phone conversations were very aggressive on mr anderson's part i'm gonna go after sergio hard i'm gonna get sergio sergio better look out now that's tough aggressive mean threats and while he says while anderson may say that i didn't make those kinds of threats you have a factual dispute which is what this court has called fodder for the jury and with respect to um the competing evidence miss simonelli who is a manager testified by declaration that she reviewed the audits employee audits of about 20 or 21 other employees and that she found the same kinds of infractions that mr castilleja was accused of such as specifically not requiring probationers to take the court ordered urinalysis testing such as letting a probationer who was committing infractions in the conditions of his probation i believe my time is running out your honors have a good afternoon and thank you very much for your courteous attention to the arguments you're very welcome mr van o's thank you counsel miss artelino thank you for a well-presented argument the case is under submission and the court stands in recess until tomorrow morning thank you thank you your honors